Submitted on record and briefs January 9, affirmed February 28, 1996

EAST LANCASTER
NEIGHBORHOOD ASSOCIATION,
Faye Wright Neighborhood Association,
North Lancaster Neighborhood
Association, Southeast Salem
Neighborhood Association,
Tom Browning, Richard L. Mathews,
Citizens for the Preservation of
Neighborhoods and Northeast Neighbors,
*Petitioners below,*

*and*

GRANT HIGHLAND
NEIGHBORHOOD ASSOCIATION,
South Central Association of Neighbors,
League of Women Voters of Marion/Polk Counties
and Jon Christenson,
*Petitioners,*

*and*

Alan BONER
and Sally Miller,
*Intervenors,*

*v.*

CITY OF SALEM
and Salem-Keizer School District 24-J,
*Respondents.*

(94-206; CA A90797)

911 P2d 1283

D. Olcott Thompson filed the brief for petitioners Grant Highland Neighborhood Association, South Central Association of Neighbors and League of Women Voters of Marion/Polk Counties.

Jon Christenson, petitioner *pro se*, and Daniel Kearns and Preston Gates & Ellis for intervenors, filed the brief jointly.

Paul A. Lee, Assistant City Attorney, Kris Jon Gorsuch and Saalfeld, Griggs, Gorsuch, Alexander & Emerick, P.C. filed the brief for respondents.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Jon Christenson (Christenson)[1] and a group of associations, including the League of Women Voters of Marion/Polk County (collectively "The League"), separately seek review of LUBA's affirmance of respondent City of Salem's declaratory ruling that had the effect of approving the land use aspects of respondent school district's (district) selection of the "Pringle site" over two others that were considered as the new location for the Leslie Middle School. We affirm.

■ Although there were several issues presented to and decided by LUBA, the League and Christenson make only one assignment of error each to us. The League contends that LUBA erred by upholding the city council's interpretation of a "good cause" exception to the "centrality" requirement of the city's comprehensive plan Policy K. The city interpreted "good cause" in its legislation as allowing the school to be located at the Pringle site, although the other two sites are more "central." LUBA affirmed the interpretation on the basis of *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and its statutory and case law progeny. The League argues that LUBA misread and misapplied those authorities and "gave too much deference" to the city's interpretation. We agree with LUBA's understanding and application of *Clark* and with its decision on the interpretive issue here. We therefore are not persuaded by the League's assignment.

■ Christenson's assignment challenges LUBA's holding that the city committed no error by concluding that the Goal 12 Transportation Planning Rule (TPR), OAR 660-12-000 *et seq* (1993), was inapplicable to its decision. OAR 660-12-055(3), a section of that rule, provided, in relevant part at the relevant time:

"By May 8, 1994 affected cities and counties within MPO areas shall adopt land use and subdivision ordinances or amendments required by OAR 660-12-045(3), (4)(a)-(e) and (5)(d). Affected cities and counties which do not have

---

[1] Intervenors Alan Boner and Sally Miller appear on a "joint brief" with Christenson. For convenience, we will refer to the three collectively in the text by the use of Christenson's name.

acknowledged ordinances addressing the requirements of this section by the deadlines listed above shall apply OAR 660-12-045(3), (4)(a)-(e) and (5)(d) directly to all land use decisions and all limited land use decisions."[2]

The application for the declaratory ruling was filed on June 22, 1993, before the city was required to adopt the legislation mandated by OAR 660-12-055(3). The city's final decision was made after May 8, 1994, and it had not adopted the ordinances or amendments called for by the state rule by that time. Christenson argues that the city was therefore required to apply the state provisions cited in OAR 660-12-055(3) in making this land use decision. LUBA disagreed and concluded that ORS 227.178(3) precluded the city from applying standards and criteria that took effect after the request for the declaratory ruling was filed. That section provides, as relevant, that a city's

"approval or denial of the application shall be based upon the standards and criteria that were applicable at the time the application was first submitted."[3]

LUBA explained that some of the opponents of the city's decision argued that

"because the TPR is a state administrative rule and not a local land use standard, ORS 227.178(3) does not apply. The city responds that since the TPR became applicable on May 8, 1994, it was not applicable on June 22, 1993, when the

---

[2] Christenson also relies on ORS 197.646, which provides, as relevant:

"(1) A local government shall amend the comprehensive plan and land use regulations to implement new or amended statewide planning goals, commission administrative rules and land use statutes when such goals, rules or statutes become applicable to the jurisdiction. Any amendment to incorporate a goal, rule or statute change shall be submitted to the department as set forth in ORS 197.610 to 197.625.

"* * * * *

"(3) When a local government does not adopt comprehensive plan or land use regulation amendments as required by subsection (1) of this section, the new or amended goal, rule or statute shall be directly applicable to the local government's land use decisions."

[3] Christenson does not argue that LUBA erred by applying ORS 227.178(3) specifically or ORS 227.160 *et seq* generally to this proceeding for a declaratory ruling under the city code which, at least arguably, may not constitute a proceeding on a permit application. Indeed, as our later discussion demonstrates, his arguments presuppose that the statute is applicable insofar as locally-enacted standards and criteria are involved. We therefore assume that it is, without deciding the question. We note that a case can be made for either answer. *See* ORS 227.178(2).

application for an interpretation was originally filed. The city contends it acted properly in refusing to apply the TPR.

"The Court of Appeals has held that the use of 'standards and criteria' in ORS 227.178(3) is to

" 'assure both proponents and opponents of an application that the substantive factors that are actually applied and that have a meaningful impact on the decision permitting or denying an application will remain constant throughout the proceedings.' *Davenport v. City of Tigard*, 121 Or App 135, 854 P2d 483 (1993).

"*See also Sunburst II Homeowners Assn. v. City of West Linn*, 101 Or App 458, 790 P2d 1213, *rev den* 310 Or 243, 796 P2d 360 (1990). This objective would not be attained if amendments to state regulations had the effect of changing the criteria affecting an application during the proceedings.

"OAR 660-12-055(3), which requires direct application of specific sections of the TPR in certain cities after May 8, 1994, does not override ORS 227.178(3). *When OAR 660-12-045(3), (4)(a)-(e) and (5)(d) are applied directly, in cities that have not adopted the required amendments to their comprehensive plans and regulations, they act as a substitute for such amendments and apply only to applications submitted after that date.* (Emphasis supplied; footnote omitted.)

In his argument to us, Christenson again emphasizes the point that was made to LUBA that ORS 227.178(3) applies only to changes in local standards and does not bar the application of state standards that take effect after an application is filed. Respondents make a number of arguments for the opposite conclusion. One of their arguments echoes the language we have emphasized in our quotation from LUBA's opinion. We agree with that argument.

OAR 660-12-055(3) does not serve principally to make its own requirements applicable to local government land use decisions. Its main objective is to require the localities to enact and apply complying legislation of their own. Only if a local government has failed to do that by the specified date must it apply the state rule directly and, even

in the case of local governments that did not enact their own legislation by May 8, 1994, they presumably could apply complying local legislation enacted after that date instead of the state rule.

■        Had the city timely enacted the local legislation required by OAR 660-12-055(3) after the application was filed but before the city rendered its decision, the "standards and criteria" contained in that new local legislation could not have been applied to the decision consistently with ORS 227.178(3). We agree with LUBA that, when the provisions of the rule apply directly in local jurisdictions because they have not enacted "the required amendments to their comprehensive plans and regulations, [the rule provisions] act as a substitute for such amendments and," as the required local legislation itself would do, "apply only to applications submitted after" the date they became applicable.[4] LUBA committed no error.

Affirmed.

---

[4] It is unnecessary for us to decide whether, as a general proposition, ORS 227.178(3) applies to state provisions that are not simply "substitutes" for local legislation that they require to be enacted.